**Mike BRUCE et al., Plaintiffs-Appellants,**

v.

**MARTIN–MARIETTA CORPORATION
and Ozark Airlines, Inc.,
Defendants-Appellees.**

**Nos. 75–1683, 75–1684.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted May 18, 1976.

Decided Sept. 24, 1976.

Rehearing Denied in No. 75–1683
Oct. 29, 1976.

Larry A. Tawwater and John W. Norman, Oklahoma City, Okl. (Lampkin, Wolfe, Burger, Abel, McCaffrey & Norman, Oklahoma City, Okl., on the brief), for plaintiffs-appellants.

D. C. Johnston, Jr., Oklahoma City, Okl. (Pierce Couch Hendrickson & Short, Oklahoma City, Okl., of counsel, on the brief), for defendant-appellee Martin-Marietta Corp.

James D. Foliart, Oklahoma City, Okl. (Foliart, Mills & Niemeyer and George W. Dahnke, Oklahoma City, Okla., on the brief), for defendant-appellee Ozark Airlines, Inc.

Before McWILLIAMS and BREITENSTEIN, Circuit Judges, and ZIRPOLI, District Judge.*

BREITENSTEIN, Circuit Judge.

These consolidated appeals relate to a product liability case arising out of an airplane crash. Plaintiffs-appellants are persons injured, and representatives of persons killed, in the crash. Defendant-appellee Martin-Marietta Corporation manufactured the plane. Defendant-appellee Ozark Airlines was an intermediate owner and seller of the plane. Jurisdiction is based on diversity. The district court gave summary judgment for the defendants. We affirm.

The airplane, a Martin 404, was chartered to carry the Wichita State University team and some of its supporters to a football game in Logan, Utah. On October 2, 1970, the plane crashed into a mountain west of Silver Plume, Colorado. The plane first struck trees at an altitude of approximately 10,800 ft. and then travelled 425 ft. before coming to rest. Seats in the passenger cabin broke loose from their floor attachments, were thrown forward against the bulkhead of the plane, and blocked exit. A fire then developed. Of the 40 persons on the plane, 32 died in the crash.

Martin manufactured the plane and sold it to Eastern Airlines in March, 1952. Eastern used the plane about ten years and in 1962 sold it to Mohawk Airlines which used it about three years and sold it to Ozark Airlines in 1965.

In 1967, Ozark sold the plane to Fairchild-Hiller Corporation, a manufacturer of aircraft. The plane was in storage until sometime in 1970 when it was sold to Jack Richards Aircraft Company. Golden Eagle Aviation contracted with Wichita State University to provide transportation for its football games away from home. Golden Eagle supplied the crew and used the Richards aircraft. Eastern, Mohawk and Ozark are all carriers providing scheduled services under pertinent federal aviation regulations. The defendants in the instant suit are Martin and Ozark.

On these appeals the plaintiffs do not contend that any action of either defendant caused the plane to crash. Their claims are that the defendants' failures to design, manufacture, or maintain the plane in crashworthy condition caused the deaths, or enhanced the injuries, of the passengers. The alleged defects are the inadequacy of the seat fastenings and the lack of protection against fire. Plaintiffs seek recovery on theories of negligence, implied warranty, and strict liability in tort.

 In this diversity case the conflict of law rule of the forum state, Oklahoma, applies. *Klaxon Co. v. Stentor Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477. Oklahoma has adopted the significant contacts rule. *Brickner v. Gooden*, Okl., 525 P.2d 632, 637, says:

"The factors to be taken into account and to be evaluated according to their relative

---

* Of the Northern District of California, sitting by designation.

importance with respect to a particular issue, shall include:

(1) the place where the jury occurred,

(2) the place where the conduct causing the injury occurred,

(3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(4) the place where the relationship, if any, between the parties occurred."

■ The only connection of Colorado is that a transient airplane, flying interstate, crashed there. Plaintiffs assert no claims based on operation of the plane. The state or states in which the asserted misconduct of the defendants occurred is not identified. The domicile or residence of the plaintiffs is varied. Most of the plaintiffs have Kansas residence but some have Oklahoma. Defendant Martin has its principal place of business in Maryland and defendant Ozark in Missouri. There was no direct relationship between those injured or killed and either Martin or Ozark. The trial court concluded that, under the significant contacts rule, the laws of Maryland applied to determine the liability of Martin and those of Missouri to determine that of Ozark. The district court's choice of law is supportable and is not attacked on these appeals. Plaintiffs say, Br. p. 8, that "the laws of all of the states involved appear to be very similar with respect to the issues presented in this appeal."

We have no need to delve into the esoteric differences between implied warranty and strict liability in tort. The parties have briefed the case on the theories of strict liability in tort and negligence. The district court accepted those theories as controlling. The classic statement of strict liability in tort is found in Restatement of Torts, 2d, § 402A which reads:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and,

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

I.

## LIABILITY OF MARTIN

Martin was the manufacturer and original seller of the plane. Martin does not claim any change in the condition of the plane. As to strict liability, the question is whether the plane was sold "in a defective condition unreasonably dangerous to the user." The negligence question is whether Martin exercised reasonable care. See *Volkswagen of America, Inc. v. Young*, 272 Md. 201, 321 A.2d 737.

■ A summary judgment is proper upon a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), F.R.Civ.P. All matters in the record and all reasonable inferences to be drawn therefrom must be construed liberally in favor of the party opposing the motion. *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.*, 10 Cir., 516 F.2d 33, 36. Conclusionary allegations do not establish an issue of fact under Rule 56. *Bumgarner v. Joe Brown Co.*, 10 Cir., 376 F.2d 749, 750. "[T]he trial court may pierce the pleadings by determining from the depositional proof, admissions and affidavits in the record whether any material issues of fact exist." *Ando v. Great Western Sugar Co.*, 10 Cir., 475 F.2d 531, 535 (footnote omitted).

The question is whether there is any genuine issue as to any material fact. Plaintiffs claim that the plane was not equipped with crashworthy design characteristics in two particulars; (1) the seats and seat fas-

tenings were not designed or manufactured to withstand a crash and, (2) the aircraft was not designed so as to minimize the possibility of fire occurring after a crash.

In support of its motion for summary judgment, Martin submitted the affidavit of its Assistant Secretary pertaining to the design of the plane. It was designed and certificated as a land plane for the commercial transportation of passengers, mail and cargo. The plane was designed "to meet or exceed all applicable design requirements, safety requirements and other criteria prescribed by the Civil Aeronautics Administration" and was manufactured and certificated in accordance with specified CAA regulations. The affidavit stated with particularity the fire protection features incorporated in the plane design. With reference to the seats, it said:

"The seats were transport type duplex seats designed and manufactured by the Warren-McArthur Corporation of Bantam, Connecticutt [sic], and were designed to meet or exceed all of the criteria prescribed in Civil Air Regulation 514.35 (CAA Technical Standard Order No. C–25A)."

In response, plaintiffs presented the affidavit of an aircraft accident investigator whose qualifications are not questioned. He said:

"My studies thus far indicate that there were airline passenger seats in common use on October 2, 1970, which, if installed in the subject Martin 404 aircraft, would have remained in place throughout this otherwise survivable accident and would not have trapped the occupants in the burning aircraft. An occupant in this crash should not have had his escape from the burning aircraft impeded by seat failures. In the crash in question the seat failures constituted an unreasonable dangerous condition to the passengers because the seat failures prevented them from exiting the burning aircraft."

When the plane was manufactured, the Civil Aeronautics Act of 1938, 52 Stat. 973 et seq., as amended, was in effect. The Civil Aeronautics Authority was charged with the duty of the regulation of air transportation so as to assure the "highest degree of safety." 52 Stat. 980, § 2(b). Section 601(a)(1), 52 Stat. 1007, empowers CAA "to promote the safety of flight" by prescribing "[s]uch minimum standards governing the design * * * of aircraft * * * as may be required in the interest of safety * * *." *Rosenhan v. United States*, 10 Cir., 131 F.2d 932, 935, says that the 1938 Act "is devoted to the promotion of safety" in air transportation. The 1938 Act was repealed in 1964 and superseded by the enactment of a comprehensive "Federal Aviation Program." 49 U.S.C. §§ 1301 et seq. Section 1421(a)(1) repeats the language found in § 601(a)(1) of the 1938 Act.

■ Compliance with governmental air-safety regulations is admissible, but not conclusive, evidence in a suit arising out of an airplane crash. *Lightenburger v. Gordon*, 81 Nev. 553, 407 P.2d 728, 738, a negligent operation case. *Banko v. Continental Motors Corp.*, 4 Cir., 373 F.2d 314, was a case arising out of a Maryland plane crash. Recovery was sought on the grounds of negligence and express and implied warranty. Applying Maryland law, the court said that federal air safety regulations "whose purpose is 'to promote safety of flight of civil aircraft', 49 U.S.C. § 1421 (1964), seem to us to be relevant and useful evidence on the standard-of-care issue, and we think them admissible under the federal practice." *Ibid.* at 316 (citations omitted).

Plaintiffs do not controvert the Martin affidavit that the plane which crashed was designed "to meet or exceed" all applicable CAA requirements. They emphasize that the 1938 Act refers to "minimum standards" but they do not present any more stringent standards which might have been applicable at the time of manufacture.

■ The plaintiffs' specific allegations relate to the fire hazard and the adequacy of the seat fastenings. On the fire hazard, plaintiffs do not contest the Martin affidavit which shows not only compliance with air safety regulations but also specific de-

sign features for protection against fire. The only fact shown by plaintiffs with regard to the seats is that in 1970, 18 years after Martin made and sold the plane, airplane passenger seats, which would have withstood the crash, were in use. The record establishes that when the plane was made and first sold, its design was within the state of the art. The plaintiffs' affidavit that 18 years after the manufacture and sale of the plane safer passenger seats were in use is not relevant to the determination of whether Martin, by satisfying the 1952 state-of-art requirements, exercised reasonable care and, hence, was not negligent.

Plaintiffs say that state-of-art evidence is not material when the claim is based on strict liability. They argue that a showing of a design defective in 1970 establishes that the plane was defective in 1952, the time of the original sale, absent a subsequent alteration of the plane. For support of their position, plaintiffs rely on *Pryor v. Lee C. Moore Corp.*, 10 Cir., 262 F.2d 673, and *Mickle v. Blackmon*, 252 S.C. 202, 166 S.E.2d 173. These cases hold that prolonged safe use of a product is evidence of lack of defect but is not conclusive. We have no quarrel with the rule but have no need to apply it here.

There is authority that state-of-art evidence is not relevant to a strict liability claim. *Cunningham v. MacNeal Memorial Hospital*, 47 Ill.2d 443, 226 N.E.2d 897, 902, 904; and *Gelsumino v. E. W. Bliss Co.*, 10 Ill.App.3d 604, 295 N.E.2d 110, 113. The basic reasoning is that the principles noted in § 402A(1) are, by subsection (a), made applicable although "the seller has exercised all possible care in the preparation and sale of his product." To our knowledge, none of the states whose laws might apply to the instant case have adopted the Illinois rule. We respectfully reject it.

The crucial words in § 402A are "defective condition" and "unreasonably dangerous." A majority of the courts have required a plaintiff to prove both. See e. g. *Kleve v. General Motors Corp.*, Iowa, 210 N.W.2d 568; *Brown v. Western Farmers Ass'n*, Or., 521 P.2d 537; and *Jagmin v.*

*Simonds Abrasive Co.*, 61 Wis.2d 60, 211 N.W.2d 810. Some courts have eliminated the "unreasonably dangerous" requirement. See *Anderson v. Fairchild Hiller Corp.*, D.Alas., 358 F.Supp. 976; *Cronin v. J. B. E. Olson Corp.*, 8 Cal.3d 121, 104 Cal.Rptr. 433, 501 P.2d 1153; and *Glass v. Ford Motor Co.*, 123 N.J.Super. 599, 304 A.2d 562. Other courts have eliminated the "defective condition" requirement. See *Ross v. Up Right, Inc.*, 5 Cir., 402 F.2d 943; and *Seattle-First National Bank v. Tabert*, 86 Wash.2d 145, 542 P.2d 774. We proceed on the basis that both requirements must be satisfied.

With regard to "defective condition" Comment g to § 402A Restatement of Torts 2d at 351, says:

"The rule stated in this Section applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him."

With regard to "unreasonably dangerous" Comment i says, Ibid. at 352:

"The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common in the community as to its characteristics."

Whether concern is with one or both of the requirements, there is "general" agreement that to prove liability under § 402A the plaintiff must show that the product was dangerous beyond the expectation of the ordinary customer. State-of-art evidence helps to determine the expectation of the ordinary consumer. A consumer would not expect a Model T to have the safety features which are incorporated in automobiles made today. The same expectation applies to airplanes. Plaintiffs have not shown that the ordinary consumer would expect a plane made in 1952 to have the safety features of one made in 1970. State-of-art evidence was properly received and considered by the trial court.

The situation with which we are concerned is somewhat similar to the "second-

collision" automobile cases because the plaintiffs' contention is that the plane was not "crashworthy." The "second collision" cases are summarized and discussed at length by the Maryland Court of Appeals in *Volkswagen of America, Inc. v. Young,* 272 Md. 201, 321 A.2d 737. In the instant case the trial court held that the law of Maryland controls the substantive issues in the claim against Martin. The Maryland court said, Ibid. at 747:

"Regardless of whether the theory of § 402A of the Restatement should be accepted in other contexts, we are convinced that it has no proper application to liability for *design* defects in motor vehicles."

See also *Frericks v. General Motors Corp.,* 274 Md. 288, 336 A.2d 118, 124. The principle is applicable to a § 402A case involving design defects in airplanes.

■■■■ We are aware of the conflicts-of-law problems and of the claims based on negligence, implied warranty, and strict liability in tort. Considering the record as a whole in the light most favorable to the plaintiffs, and applying the principle of law, strict liability in tort, most favorable to the plaintiffs, we are convinced that plaintiffs may not recover from Martin. Proof of injuries in an airplane crash does not prove defective design and raises no presumption of defectiveness. *Gates v. Ford Motor Co.,* 10 Cir., 494 F.2d 458, 459. The record discloses no genuine issue as to any material fact. Summary judgment for Martin was proper. Ibid. at 460.

## II.

### LIABILITY OF OZARK

Ozark was an intermediate owner and seller of the plane. Two commercial airlines had owned and used the plane before its acquisition by Ozark. As part of a transaction for the purchase of planes from a manufacturer, Fairchild-Hiller, Ozark transferred the plane, and a number of others, to Fairchild. Over two years later, Fairchild sold the plane to Richards who furnished it to Golden Eagle for the trans-

portation of the Wichita State football team.

The claim against Ozark presents the same conflict-of-laws problems that have been discussed in connection with the claim against Martin. All parties insist that their views should prevail without regard to what state law is applicable. The trial court held that under the significant contacts test adopted by Oklahoma, the forum state, the law of Missouri controls the liability of Ozark.

The question on the strict liability claim is whether Ozark "is engaged in the business of selling" airplanes. See Restatement of Torts 2d, § 402A(1)(a). The facts relating to the Ozark-Fairchild transaction are not disputed. Plaintiffs produced nothing to show that Ozark made any significant changes in the plane during its ownership. Ozark agreed to sell about 40 planes "in an 'as is' condition, provided however, that they will be certificated for scheduled domestic airline operation, except for time between overhauls." Plaintiffs do not contest certification.

Ozark is in the business of providing scheduled commercial air transportation. As an air carrier Ozark acquired and sold airplanes. Regulations of the Civil Aeronautics Board, 14 C.F.R. §§ 234.1–235.5, provide that if an air carrier makes a profit or other gain in the disposition of flight equipment, all of such gain must be "applied to investment in flight equipment or to the retirement of debt contracted for investment in flight equipment * * *." See 14 C.F.R. § 235.3. Air carriers are limited in their choice of aircraft, 14 C.F.R. §§ 121.153 and 121.163, and are subjected to requirements for airworthiness, 14 C.F.R. §§ 121.211–121.291, and equipment, 14 C.F.R. §§ 121.301–121.360. Plaintiffs do not claim that Ozark violated any regulation in its acquisition, use, and sale of the plane in question.

■■■■ Plaintiffs say that Ozark is engaged in the business of selling airplanes because its transaction with Fairchild covered 40 planes. The number of planes sold is not determinative. Ozark was not a

manufacturer, wholesaler, distributor, or retailer. See Comment f to § 402A which specifies the mentioned categories and says that the basis for the rule placing responsibility on one engaged in the business of selling a product is the responsibility to the public undertaken by the seller of an unsafe product and "the forced reliance upon that undertaking on the part of those who purchase the goods." Missouri, the state whose law was held to apply to Ozark under the significant contacts test, has adopted § 402A, *Keener v. Dayton Electric Manufacturing Co.,* Mo., 445 S.W.2d 362, 364, and has recognized the "forced reliance" test, *Katz v. Slade,* Mo., 460 S.W.2d 608, 613. The record contains nothing to show that any person buying this used plane, or any customer of that person, placed, or would have placed, any reliance on any conduct of Ozark. Without reliance there is no liability.

There are cases which impose § 402A liability on the seller of a used product. See e. g. *Hovenden v. Tenbush,* Tex.Civ. App., 529 S.W.2d 302; and *Markle v. Mulholland's, Inc.,* 265 Or. 259, 509 P.2d 529. We are aware of no case which has extended strict liability to an intermediate owner and seller. Cases rejecting this concept include *Balido v. Improved Machinery, Inc.,* 29 Cal.App.3d 633, 105 Cal.Rptr. 890; *Ikerd v. Lapworth,* 7 Cir., 435 F.2d 197, 201–203.

Plaintiffs' reliance on the definition of "merchant" found in § 2–104 of the Uniform Commercial Code does not help them. Ozark was an operator of commercial aircraft under federal certification. Its aircraft are depreciating assets. When it sells an aircraft at a profit, it must reinvest in flight equipment or retire debt arising from investment in flight equipment. It did not design, manufacture, alter, or misrepresent the plane. It was a commercial air carrier, not a merchant or a person engaged in the business of selling airplanes.

In regard to the negligence claim, Ozark was the fourth owner in the chain of title and was succeeded by two other owners. Ozark owed no duty to the subsequent purchaser or to those to whom that purchaser sold transportation. *Thrash v. U-Drive-It Co.,* 158 Ohio St. 465, 110 N.E.2d 419, 423. The record discloses no issue as to any material fact. Summary judgment was proper. No matter what theory of liability is asserted, whether it is negligence, implied warranty, or strict liability in tort, and no matter what state law is applicable to the peculiar facts, Ozark is not liable to the plaintiffs.

The judgments in favor of Martin and Ozark are severally affirmed.