**SUNBIRD AIR SERVICES, INC., individually and on behalf of all others similarly situated, Plaintiff,**

v.

**BEECH AIRCRAFT CORPORATION, Pratt & Whitney Aircraft of West Virginia, Inc., Pratt & Whitney Canada, Inc., Bendix Avelex, Inc., Bendix Corporation, and Allied–Signal, Inc., Defendants.**

Civ. A. No. 89–2181–V.

United States District Court,
D. Kansas.

March 30, 1992.

Stephen W. Cavanaugh, Charles S. Fisher, Jr., Fisher, Cavanaugh & Smith, P.A., Topeka, Kan., Herbert B. Newberg, and Dante Mattioni, Kenneth Giannantonio and Philip Ford, Mattioni, Mattioni & Mattioni, Ltd., Philadelphia, Pa., for plaintiff.

William L. Oliver, Jr., Dwight D. Wallace, Terry L. Malone, William Robert Martin, Martin, Pringle, Oliver, Wallace & Swartz, Wichita, Kan., for Beech Aircraft Corp.

Charles W. Harris, Curfman, Harris, Borniger, Rose & Weltz, Wichita, Kan., Robert W. Ogren, Donna L. Yesner, Pettit & Martin, Washington, D.C., Walter G. Petty, III, Richard M. Hunt, Dallas, Tex., for Pratt & Whitney Aircraft of West Virginia, Inc. and Pratt & Whitney Canada, Inc.

Anthony F. Rupp, Shughart, Thomson & Kilroy, Overland Park, Kan., and John M. Kilroy, and Thomas F. Fisher, Shughart, Thomson & Kilroy, P.C., Kansas City, Mo., for Bendix Avelex, Inc., Bendix Corp. and Allied Signal, Inc.

## MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

This case is before the court on the following:

> Defendants' Motion to Dismiss for the Complaint for Lack of Subject Matter Jurisdiction (Doc. 69);
>
> Defendant Beech Aircraft Corporation's Motion to Dismiss or Stay Case (Doc. 327); and
>
> Defendant Beech Aircraft Corporation's Motion to Dismiss (Doc. 390).

Plaintiff Sunbird Aircraft Services, Inc. ("Sunbird") has responded and opposes these motions. For the reasons stated below, defendants' motions to dismiss are denied.

On April 20, 1989, plaintiff filed this action on behalf of itself, and pursuant to Fed.R.Civ.P. 23, on behalf of all the owners of Beech aircraft with Pratt & Whitney PT6A gas turbine engines that incorporate an allegedly defective Bendix pneumatic fuel control unit design. On December 6, 1990, plaintiff was permitted to file a second amended complaint.[1] Plaintiff's Second Amended Complaint alleges fraud and deceit, violations of federal common law, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. §§ 1961 et seq.), strict liability, negligence, breach of express and implied warranties, unjust enrichment, concert of action, civil conspiracy, fraudulent concealment of all of the above claims, and willful, wanton and outrageous conduct. Plaintiff seeks compensatory and punitive damages.

In their various motions to dismiss,[2] defendants argue that the court lacks subject matter jurisdiction over plaintiff's claims and that the case should be dismissed because (1) plaintiff's claims are preempted by the Federal Aviation Act, 49 U.S.C. §§ 1301 et seq., and the Federal Aviation Administration ("FAA") has exclusive jur-

---

1. At this time, plaintiff was also granted leave to supplement its responses to defendants' pending motions to dismiss and defendants were granted leave to reply to plaintiff's supplemental responses.

2. The court notes that the motions to dismiss (Docs. 327 and 390) filed by defendant Beech

Aircraft Corporation merely repeat arguments already raised in defendants' joint motion to dismiss (Doc. 69). If defendant Beech wished to file supplemental authority in support of the original motion to dismiss, it should have sought leave from the court to do so, instead of burdening the court with additional motions.

isdiction over plaintiff's claims; (2) plaintiff's claims constitute an impermissible collateral attack on the FAA's certification of the Beech aircraft and Pratt & Whitney PT6A engine; (3) plaintiff has failed to exhaust its administrative remedies before the FAA; and (4) the FAA has primary jurisdiction over plaintiff's claims.

Resolution of the above issues turns upon the characterization given plaintiff's prayers for relief. Plaintiff claims that it seeks money damages as compensation for various torts. Defendants argue that resolution of plaintiff's claims require determining the airworthiness of the aircraft with and without the proposed addition of a P3 fuel control unit filter and that plaintiff's prayers for relief amount to a request to decertify the current FAA-approved engine design.

As an initial matter, the court notes that in its Second Amended Complaint, plaintiff has dropped its request for court-ordered changes to the design of the pneumatic fuel control units.[3] Plaintiff now seeks compensatory and punitive damages including, *inter alia*, diminution in the value of the aircraft, property damage to the aircraft in the form of pneumatic contamination, a resultant unreasonably dangerous aircraft, the cost of remedial action, loss of use of the aircraft, and restitution.

Under the doctrine of preemption, federal law prevails over state law if Congress has expressed an intent to occupy a given field in which federal law is supreme. *Louisiana Public Service Com. v. FCC,* 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986). But even if there is no intent, state law is preempted if it conflicts with federal law so that it is impossible to comply with both, or if the state regulations stand as an obstacle to the accomplishment of the full purposes that Congress sought to achieve. *Pacific Gas & Electric Co. v. State Energy Resources Conservation & Dev. Com.,* 461 U.S. 190,

203–04, 103 S.Ct. 1713, 1721–22, 75 L.Ed.2d 752 (1983). Courts are reluctant to infer preemption, and it is the burden of the party claiming that Congress intended to preempt state law to prove it. *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 132, 98 S.Ct. 2207, 2217, 57 L.Ed.2d 91 (1978).

■ Applying these principles to the present case, the court finds that plaintiff's claims are not preempted by the Federal Aviation Act. 49 U.S.C. § 1506 provides that:

> Nothing contained in this Act shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies.

This section recognizes that the statutory scheme established by the Federal Aviation Act is designed merely to complement existing statutory and common law remedies, not supplant them. *Brunwasser v. Trans World Airlines, Inc.,* 541 F.Supp. 1338, 1345 (W.D.Pa.1982); *Elsworth v. Beech Aircraft Corp.,* 37 Cal.3d 540, 208 Cal. Rptr. 874, 879–80, 691 P.2d 630, 635 (1984) (en banc), *cert. denied,* 471 U.S. 1110, 105 S.Ct. 2345, 85 L.Ed.2d 861 (1985). Moreover, it is clear that 49 U.S.C. § 1506 applies to remedies arising under both federal and state law. *See, e.g., In re Air Crash Disaster at John F. Kennedy International Airport,* 635 F.2d 67, 74–75 (2d Cir. 1980); *Porter v. Southeastern Aviation, Inc.,* 191 F.Supp. 42 (M.D.Tenn.1961).

Moreover, the allowance of state law remedies does not create an irreconcilable conflict between federal and state regulations. Sunbird does not challenge the power of the FAA to adopt safety regulations or to certify aircraft as complying with those regulations. Nor does it seek to revoke the certification of the Beech aircraft. The regulations promulgated by the FAA are merely minimum safety standards

---

**3.** Plaintiff had previously sought (1) preliminary relief, consisting of an overhaul of the engine's pneumatic fuel control unit and the installation of a P3 filter in the P3 air supply tube; (2) intermediate relief, consisting of modifications to the current P3 air supply tube configuration and the installation of a manual fuel control override; and (3) permanent relief, consisting of the replacement of the existing fuel control unit with an electronic or other nonpneumatic unit. Plaintiff's First Amended Complaint, Prayer for Relief.

and do not preclude a finding of negligence where a reasonable person would take additional precautions. 49 U.S.C. § 1421(a); *Bruce v. Martin–Marietta Corp.*, 544 F.2d 442, 446 (10th Cir.1976). Thus, even if the trier of fact should find that the fuel control unit was defective, this would have no effect on the FAA's power to certify aircraft, or on the validity of its certification decision. *Elsworth*, 208 Cal.Rptr. at 879–80, 691 P.2d at 635. For this reason, the court also concludes that plaintiff's claims are not an impermissible collateral attack on the FAA's decision to certify the aircraft.

Finally, the allowance of state remedies does not frustrate the objectives of the Federal Aviation Act. The purpose of the regulations is to protect those who fly in airplanes or who are affected by their flight. *See, e.g., Arney v. United States*, 479 F.2d 653, 658 (9th Cir.1973); *In re Air Crash Disaster Near Silver Plume, Colo.*, 445 F.Supp. 384, 400 (D.Kan.1977). This goal would be enhanced rather than defeated by allowing a jury to consider whether the design of an aircraft is defective, despite the fact that the FAA has already issued a type certificate for the aircraft. *See Fisher v. Bell Helicopter Company*, 403 F.Supp. 1165, 1172 (D.C.1975) (FAA regulations "must be reinforced and strengthened by courts called on to develop rules of liability and damages" where "high standards consistent with the regulatory scheme have not been maintained with resulting injury to persons and property."); *Elsworth*, 691 P.2d at 636–37.

For the foregoing reasons, the court finds that defendants have failed to meet their burden of proving that plaintiff's claims are preempted by the Federal Aviation Act. Likewise, defendants have failed to show that plaintiff's claims are an impermissible collateral attack on the FAA's certification of the aircraft.

The court next turns to the question of plaintiff's failure to exhaust its administrative remedies. It is well settled that when there is no administrative remedy available, the doctrine of exhaustion does not apply. *Rosado v. Wyman*, 397 U.S. 397, 405–06, 90 S.Ct. 1207, 1214, 25 L.Ed.2d 442 (1970); *Lloyd v. Regional Transp. Authority*, 548 F.2d 1277, 1287 (7th Cir.1977); *Nodleman v. Aero Mexico*, 528 F.Supp. 475, 488 (C.D.Cal.1981). In this case, the FAA's remedial powers are limited to cease and desist orders which can only proscribe future violations. *Pinehurst Airlines, Inc. v. Resort Air Services, Inc.*, 476 F.Supp. 543, 548 (M.D.N.C.1979); *see* 49 U.S.C. § 1482; 14 C.F.R. § 13.5. The FAA does not have the power to assess damages for past wrongs. *Pinehurst*, 476 F.Supp. at 548; *Niswonger v. American Aviation, Inc.*, 411 F.Supp. 763, 768 (E.D.Tenn.1974). Thus, requiring plaintiff to seek redress from the FAA would be futile. Accordingly, the court concludes that the doctrine of exhaustion of administrative remedies does not apply to this case.

Finally, defendants argue that the case should be dismissed or in the alternative, stayed pending resolution of plaintiff's claims by the FAA. The doctrine of primary jurisdiction comes into play in cases which raise issues of fact not within the conventional experience of judges or which require the exercise of administrative discretion. *Far East Conference v. United States*, 342 U.S. 570, 574–75, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952). The doctrine functions not to determine whether the court or agency will finally decide an issue; rather it serves to delay the judicial decision until the court can take advantage of the agency's expertise. It also promotes uniform decision making in cases involving regulated industries. *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303–04, 96 S.Ct. 1978, 1986–87, 48 L.Ed.2d 643 (1976).

Applying the above principles, the court finds that it is not necessary to refer the issues in this case for resolution by the FAA under the doctrine of primary jurisdiction. The court finds that this court, with or without a jury, with the aid of expert witnesses, is capable of determining whether or not the fuel control unit design on the aircraft in question was defective. While the FAA's decision to certify the aircraft and the applicable governmental regulations will certainly be relevant to this determination, they are not dispositive of the issue. *See Bruce*, 544 F.2d at 446; *Rehler v. Beech Aircraft Corp.*, 777 F.2d 1072 (5th Cir.1985) (jury may consider whether de-

fendants' alleged compliance with FAA standards was sufficient to avoid tort liability). Moreover, juries routinely consider whether an aircraft design is defective in product liability cases. Therefore, the court concludes that the issues in this case are not outside the conventional experience of the court and do not require the special expertise of the FAA for resolution.

Defendants argue that the FAA has already asserted primary jurisdiction over the issues raised in this case by issuing a Notice of Proposed Rulemaking ("NPRM") concerning the issuance of an Airworthiness Directive ("AD") requiring the removal of P3 filters from certain models of Beech aircraft. 56 Fed.Reg. 8733–01 (1991) (to be codified at 14 C.F.R. pt. 39) (proposed Mar. 1, 1991). The NPRM states that the installation of a P3 filter could result in the aircraft's inability to safely perform the required balked landing maneuver due to insufficient engine acceleration. However, the court notes that the NPRM does not discuss the alleged problem of pneumatic contamination or the power fluctuations allegedly caused by such contamination. Therefore, the court concludes that the FAA has not exercised jurisdiction over the question of pneumatic contamination. Moreover, even if the FAA were to address the issue of pneumatic contamination, such decision would not prevent the court from providing a remedy for the property damage allegedly caused by pneumatic contamination. *Cf. Rosado*, 397 U.S. at 405–06, 90 S.Ct. at 1214 (doctrine of primary jurisdiction does not apply where no administrative remedy available); *Lloyd*, 548 F.2d at 1287.

Finally, the present case is distinguishable from the decision in *Commander Properties Corp. v. Beech Aircraft Corp.*, No. 88–2202–0 (August 6, 1991), in which the court found that the FAA had primary jurisdiction over the questions of whether the wing design of certain model of Beech aircraft was defective. In the *Commander Properties* case, the plaintiff sought court approval of a proposed wing modification which allegedly would correct the defect and make the aircraft "airworthy." The court found that the interests of uniformity and consistency would be best served by permitting the FAA to determine whether the wing is in fact defective and whether the proposed modification should be implemented.

In the present case, plaintiff has dropped its request for court-ordered modifications of the pneumatic fuel control unit and is seeking only compensatory damages. If the court were to grant plaintiff's requested relief, the FAA's ability to consider modification of the pneumatic fuel control unit would not be affected. Moreover, such court-ordered relief in the form of damages will not conflict with any decision by the FAA concerning design changes. Accordingly, defendants' motions to dismiss or stay the case are denied.

IT IS, THEREFORE, BY THE COURT ORDERED that defendants' motion to dismiss for lack of subject matter jurisdiction (Doc. 69) is denied. Defendant Beech Aircraft Corporation's motions to dismiss (Docs. 327 and 390) are denied.

IT IS FURTHER ORDERED that, having determined that the court has subject matter jurisdiction over this case, the stay of discovery imposed on September 12, 1990, is hereby lifted. Discovery will proceed as scheduled by the court.

IT IS SO ORDERED.