ROBERT IVANOV, Plaintiff-Appellant, v. PROCESS DESIGN ASSOCIATES, Defendant-Appellee (Domtar Industries, Inc., Defendant and Third-Party Plaintiff and Separate Appellant; Diamond Engineering, Inc., *et al.*, Third-Party Defendants).

First District (1st Division) No. 1—91—0919

Opinion filed June 7, 1993.—Modified on denial of rehearing November 8, 1993.—Modified on denial of rehearing November 7, 1994.

Robert A. Clifford & Associates and David A. Novoselsky & Associates, both of Chicago (David A. Novoselsky, of counsel), for appellant Robert Ivanov.

Rooks, Pitts & Poust, of Chicago (Timothy J. Groark and Susan Clancy Boles, of counsel), for appellant Domtar Industries, Inc.

Schiff, Hardin & Waite, of Chicago (Walter C. Greenough and Mark C. Friedlander, of counsel), for appellee.

JUSTICE MANNING[1] delivered the opinion of the court:

On December 23, 1981, plaintiff, Robert Ivanov, an ironworker employed by Diamond Engineering, Inc. (Diamond), was working at a jobsite on premises owned by Domtar Industries, Inc. (Domtar), when he sustained injuries after falling from a temporary staircase constructed of cinder blocks. The project was for the construction of a manufacturing facility plant (Siftco Salt Project).

Plaintiff filed an original complaint and several amended complaints against Domtar, the owner of the property and project, and Process Design Associates (PDA), the site construction manager and engineering firm that designed the plant and administered the construction on the premises on behalf of Domtar. Third-party defendant Diamond was plaintiff's employer and the construction contractor responsible for installing the mechanical equipment. In his third amended complaint, plaintiff sought to recover for the injuries he sustained to his back, alleging negligence by Domtar and PDA in failing to provide a safe workplace.

Domtar also filed a countercomplaint for contribution against PDA and a third-party complaint for contribution and breach of contract against Diamond. Subsequently, it filed an amended countercomplaint.

---

[1]Justice Manning participated in and issued the above modified decision prior to her resignation. A previous modification was issued in this cause.

On March 2, 1988, the trial court granted summary judgment in favor of Domtar and PDA and against plaintiff on the Structural Work Act (Ill. Rev. Stat. 1987, ch. 48, pars. 60 through 69) count of plaintiff's third amended complaint. This order is not at issue in this appeal.

Thereafter, the trial court granted summary judgment in favor of PDA on July 18, 1990, on the remaining negligence count, finding that PDA did not have any responsibility for safety precautions at the jobsite. On January 9, 1991, Domtar filed a motion to make the order of summary judgment final and appealable. In the interim, plaintiff filed a fourth amended complaint at law on January 31, 1991. On February 11, 1991, the trial court made the summary judgment order of July 18, 1990, final and appealable pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)).

Thereafter, on March 8, 1991, based on Domtar's emergency motion and the stipulation and agreement of the parties, the trial court entered an order *nunc pro tunc* to January 31, 1991, incorporating by reference the plaintiff's fourth amended complaint as part of Domtar's amended counterclaim, in lieu of his third amended complaint. The trial court also entered a formal order *nunc pro tunc* to January 31, 1991, in favor of PDA providing that summary judgment was granted on count IV and amended count V of the amended counterclaim.

On appeal, plaintiff contends that the trial court erred by granting summary judgment in favor of PDA because PDA either was negligent in the performance of its contractual duty or was negligent in the performance of its voluntarily assumed duty to ensure that safety measures were taken at the construction site. Domtar, as a separate appellant, also argues that PDA was negligent in the performance of its contractual duties and that those responsibilities included insuring that safety precautions were taken. Alternatively, it maintains that PDA was negligent in its performance of a voluntarily assumed duty to supervise safety at the project site. In support of its position, Domtar relies on the decision of *Miller v. DeWitt* (1965), 59 Ill. App. 2d 38, 208 N.E.2d 249, *aff'd in part & rev'd in part* (1967), 37 Ill. 2d 273, 226 N.E.2d 630. We agree with the appellants.

■ Generally, the duty owed to a plaintiff is measured by the terms of the contractual obligation (*Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 212, 399 N.E.2d 596), and the determination of whether a contract imposes a particular legal duty is a question of law rather than an issue of fact. (*Ferentchak v. Village of Frankfort* (1985), 105 Ill. 2d 474, 480-83, 475 N.E.2d 822.) Courts will

look to the "four corners" of the contract to determine whether the contract is a complete expression of the agreement of the parties and no parol or extrinsic evidence can be considered to add another term to the agreement even though the writing contains nothing in the particular term to which the parol evidence is directed. See *McWhorter v. Realty World-Star, Inc.* (1988), 171 Ill. App. 3d 588, 525 N.E.2d 1205; Restatement (Second) of Contracts § 239 (1981).

In the present case, because Domtar sought to build the Siftco Salt Project on its property, it entered into an agreement with PDA pursuant to which PDA was to provide design engineering services and help select the construction contractor of the facility. On September 10, 1981, PDA and Domtar entered into a second contract for the services of Phillip Rockenbach, an employee of PDA, to act as site construction manager for the facility. Thereafter, on October 7, 1981, PDA awarded the construction contract to Diamond. After plaintiff hurt himself on the jobsite, all parties looked to the contracts to determine who was liable for his injuries. Based upon its interpretation of the contracts, the trial court entered summary judgment in favor of PDA.

A motion for summary judgment should be granted when the pleadings, depositions, admissions and affidavits on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c); *Addison v. Whittenberg* (1988), 124 Ill. 2d 287, 529 N.E.2d 552.) In determining whether a triable issue of fact exists, the pleadings, depositions, admissions and affidavits must be construed against the movant and in favor of the opponent. (*Addison*, 124 Ill. 2d 287, 529 N.E.2d 552.) The existence of factual questions will not preclude summary judgment unless those facts are material to the litigation.

■ Although a design professional who has been hired to perform the usual on-site observation and construction management activities for a project that it designed generally does not owe contractual employees a duty to ensure safe jobsite conditions (see *Busick v. Streator Township High School District No. 40* (1992), 234 Ill. App. 3d 647, 600 N.E.2d 46), one must look to the contract to determine respective liability. For instance, here, as in *Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1979), 76 Ill. 2d 481, 394 N.E.2d 403, the contract between the owner and the general contractor provided that the contractor would be responsible for safety. Similarly, the plaintiff there argued that the owner, because of its employment of its own employee as a construction manager, had a duty to supervise the construction, and such duty to supervise

extended to the supervision of safety on the site. The court there found the owner liable because its employee was a construction manager and although the construction manager's duties did not specifically include safety, his supervisory duties extended to safety. *Norton*, 76 Ill. 2d at 491.

In the instant case, pursuant to the September 10, 1981, contract between PDA (the engineer) and Domtar (the owner), the duties of the site construction manager were defined as follows:

"(a) Act as Domtar's representative in the administration of construction contracts.

(b) Supervise and co-ordinate Contractors in the execution of their work.

(c) Issue change notices to Contractors to cover work extra to contract.

(d) Assist with expediting of equipment deliveries.

(e) Receive equipment, arrange for storage of equipment, prepare receiving reports and turn over to Contractors.

(f) Schedule construction to minimize delays.

(g) Arrange for material testing and inspections as required.

(h) Review and approve all construction invoices and payment applications.

(i) Ensure that all work is performed in accordance with the Contract Documents including drawings and specifications.

(j) Certify substantial completion and final payment.

(k) Maintain a set of as-built drawings to be turned over to Domtar at the conclusion of the project."

■ As did the trial court, in addition to reviewing all the contracts between the parties, we have reviewed the pleadings, depositions and affidavits offered by the parties in the proceedings below. Based on paragraphs (a) and (b), we believe that the ordinary meaning of the terms in the September 10 contract provides that PDA agreed to act as the agent or "representative" of Domtar responsible for inspecting continuously or "supervising" the work of the contractors. Thus, PDA contractually agreed to act as Domtar's agent to oversee and direct the contractors in the execution of their work. A trial court could properly determine that PDA's authority coexisted with Domtar's, which clearly includes the right to require that the contractors comply with safety requirements.

Moreover, the construction contract provided that the contractor shall be responsible for contracting, maintaining and supervising all health and safety precautions and programs in connection with the work. Like *Norton*, because of PDA's decision to supply one of its own employees as a construction manager pursuant to a separate and independent contract, we conclude that a trial court could properly

determine that PDA's contractual duties of supervising work included a duty to ensure that the work was performed safely. Although there may not be explicit language in PDA's September 10 contract with respect to jobsite safety, we believe that the parties raised genuine issues of material fact as to whether PDA acted properly or improperly as Domtar's representative and as to whether PDA acted properly or improperly in supervising and coordinating the contractors in the execution of their work.

Accordingly, we find the existence of an issue of material fact as to whether PDA performed its contractual duty to supervise the workplace which ostensibly includes a duty to supervise safety at the workplace. Thus, the trial court incorrectly ruled in PDA's favor on this issue.

■ Next, plaintiff and Domtar both alternatively argue that PDA voluntarily assumed the duty to provide a safe workplace. We agree. We have searched the record. In support of its motion for summary judgment, PDA submitted the affidavit of Howard Coman, who participated in the negotiation of the contract. Mr. Coman averred that he "assumed that the Process Design Associates, Inc.'s (PDA) field representative during construction would perform the duties and responsibilities which are normally performed by engineers field representatives during construction," and that there was no discussion about PDA's responsibility for "construction means, methods or procedures or safety precautions or programs in connection with construction."

However, in response, plaintiff presented the testimony of PDA's own employee, Mr. Rockenbach, establishing that his duties included an inspection of the site for safety purposes and supervision of the work. The question of whether or not a duty was properly performed is a question of fact; but, whether, under the facts, the law raises a duty is a question of law. (*Marshall-Putnam Farm Bureau, Inc. v. Shaver* (1973), 12 Ill. App. 3d 402, 299 N.E.2d 10.) It is the function of the court to determine whether, upon facts in evidence which the jury may reasonably find to be true, the law imposes upon the defendant any legal duty to act or to refrain from acting for the protection of the plaintiff. (Restatement (Second) of Torts § 328 B(b), Comment *e*, at 151 (1965).) When we read the language "duty to supervise," we conclude that the trial court could properly determine that a contractual duty was intended between the parties whereby PDA would ensure jobsite safety on behalf of plaintiff. At the very least, based upon the testimony of the site construction manager concerning his respective duties and the affidavits of record, a trial court could properly determine under the facts that PDA assumed the duty to

provide a safe workplace. Hence, a genuine issue of material fact exists.

In addition, the record discloses that depositions were taken of two Diamond employees who were present at the jobsite on the day of the incident. In reliance on that testimony, counsel argued during the hearing that Rockenbach assumed responsibility for jobsite safety by replacing the broken cinder block staircase with a wooden staircase that was attached to or near his trailer immediately following the accident. However, the deposition testimony of these two employees which was referred to during the hearing and on this appeal is not properly a part of the summary judgment record. Accordingly, we do not and cannot consider it in reaching our disposition of this case. In any event, we find that based upon Rockenbach's testimony alone, a trial court could properly determine that a genuine issue of material fact exists as to whether PDA and/or Rockenbach voluntarily assumed the duty to ensure safety.

Accordingly, for the foregoing reasons, we reverse and remand this cause for further proceedings.

Reversed and remanded, as modified.

CAMPBELL, P.J., and BUCKLEY, J., concur.