**F I L E D**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MARY KATHRYN PECK, natural
mother of ZACHERY EUGENE PECK, a
minor,

     Plaintiff - Appellant,

v.

HORROCKS ENGINEERS, INC.,

     Defendant - Appellee.

No. 96-4029

---

**Appeal from the United States District Court**
**for the D. Utah**
**(D.C. No. 94-CV-742B)**

---

Mark L. Anderson of Christensen & Jensen, Salt Lake City, UT (L. Rich Humpherys of
Christensen & Jensen, Salt Lake City, UT with him on brief) for Plaintiff-Appellant.

M. Dayle Jeffs of Jeffs & Jeffs, Provo, UT for Defendant-Appellee.

---

Before **EBEL, KELLY** and **BRISCOE**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

     Appellant Mary Peck ("Peck") appeals the district court's grant of summary

judgment in favor of Appellee Horrocks Engineering ("Horrocks") in a wrongful death

case concerning the death of her son, Zachery Peck ("Zachery"). Peck argues that the

district court erred both in finding that Horrocks owed no duty of care to Zachery as a matter of law, and in refusing to consider an expert witness's affidavit. We find both of these arguments lacking in merit; accordingly, we AFFIRM the judgment of the district court.

## BACKGROUND

Zachery Peck was killed on July 28, 1992, when a trench wall collapsed on him during the construction of a culinary water system ("the project") to be used by the City of Talmage, Utah. At that time, Zachery was an employee of K & P Plumbing ("K & P"), a contractor which had been selected by the Duchesne County Upper Country Water District ("Water District") to install the pipeline on the project. Horrocks is an engineering firm, which had been hired by the Water District to design and inspect the construction and progress of the project.

The pipeline was installed by pipe layers into a 5'4" deep trench dug by a track hoe. OSHA and industry standards require that a trench of more than five feet in depth be either sloped or shored (using supportive beams) to protect against collapse. On the day of the collapse, the trench reached a depth of eight feet to allow the pipe to be laid underneath a steel culvert that crossed the path of the pipeline. An employee of Horrocks was involved in the decision to lay the pipe under the culvert, as opposed to over it. Zachery was laying pipe 20 feet away from the culvert, where the depth of the trench was

seven feet, when the trench collapsed on him and he was killed. In violation of OSHA regulations, the trench was neither sloped nor shored.

Following the accident, Peck sued Horrocks and the Water District for wrongful death. In opposition to Horrocks' motion for summary judgment, Peck provided the district court with an affidavit from Rex Radford, a construction expert, that claimed the Water District and Horrocks had an obligation to see that the trench complied with safety standards.

The district court determined that neither Horrocks nor the Water District owed any duty to Zachery and that each was therefore free from liability as a matter of law. The district court rejected Peck's argument that Horrocks had contractually assumed a duty of care with regard to issues of safety when it agreed to monitor operations. The district court also rejected Peck's argument that Horrocks had assumed a duty of care by concurring in the decision to deepen the trench below five feet without requiring that safety precautions be taken. In granting summary judgment, the district court refused to consider the Radford affidavit because it was conclusory and failed to set forth specific facts showing a genuine issue for trial.

Peck appeals both the court's grant of summary judgment to Horrocks and its refusal to consider the Radford affidavit. Peck does not appeal the district judge's decision to grant summary judgment to the Water District.

**DISCUSSION**

We review the grant of summary judgment de novo, applying the same legal standards used by the district court pursuant to Fed. R. Civ. P. 56(c). Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Kaul, 83 F.3d at 1212 (quoting Fed. R. Civ. P. 56(c)). "When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). If there is no genuine issue of material fact in dispute, we next determine if the district court correctly applied the substantive law. Id.

I.       APPLICABLE LAW

Jurisdiction of this case arose in the district court under 28 U.S.C. § 1332(a)(1) diversity jurisdiction; accordingly, we must apply state law to the substantive issues of this appeal. See Wood v. Eli Lilly & Co., 38 F.3d 510, 513 (10th Cir. 1994); Erie R.R. v. Tompkins, 304 U.S. 64 (1938). To determine which state's law applies, we apply the forum state's choice of law rule -- in this case, Utah's. Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1532 (10th Cir. 1996). Utah applies the law of the state

with the "most significant relationship" to the claim. Rocky Mountain Helicopters, Inc. v. Bell Helicopter Textron, 24 F.3d 125, 128 (10th Cir. 1994) (citing Forsman v. Forsman, 779 P.2d 218, 219-20 (Utah 1989)).

The parties agree that Utah has the most significant relationship to the claim. The allegedly tortious conduct occurred in Utah, the injury occurred in Utah, the plaintiff is a resident of Utah, and the relationship of the parties is centered in Utah. See Restatement (Second) of Conflict of Laws § 145(2) (1971). Thus, Utah law applies.

## II.     ENGINEER LIABILITY

Before Horrocks can be held liable for the death of Zachery, Peck must establish that Horrocks owed a duty of care to Zachery. Whether a duty of care exists is a question of law, although expert testimony may be helpful on the issue. Weber, By and Through Weber v. Springville City, 725 P.2d 1360, 1363 (Utah 1986); Wycalis v. Guardian Title of Utah, 780 P.2d 821, 827 n.8 (Utah Ct. App. 1989). Only after it has been determined that a duty of care exists can a jury determine whether that duty was breached. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 37, at 236-37 (5th ed. 1984).

As a general rule, an engineer with construction inspection responsibility over a construction project owes no duty to an independent contractor's employees. See Peterson v. Fowler, 493 P.2d 997, 999 (Utah 1972) (holding that an architect with inspection responsibility over construction owes no duty to an independent contractor's

employees).  Nonetheless, an engineer may acquire a duty of care toward an independent contractor's employees by contractually assuming a duty to maintain safety, and several courts in other states have also ruled that a duty may be created by the engineer exercising control over worker safety issues at the job site.  See Balagna v. Shawnee County, 668 P.2d 157, 163 (Kan. 1983); Peterson v. City of Golden Valley, North, 308 N.W.2d 550, 554-555 (N.D. 1981).

Peck argues that Horrocks' duty to maintain safety in the manner in which K&P did its work arose both by contract, in which it assumed such a duty, as well as by the actual exercise of control over safety issues at the job site.  We disagree with both contentions.


A.     Contractual Assumption of Duty

For purposes of determining what obligations and responsibilities were contractually assumed by Horrocks and K & P, we look to two documents:   (1) the Engineering Agreement entered into between the Water District and Horrocks (the "Engineering Agreement"); and (2) the Construction Contract entered into between the Water District and K & P (the "Construction Contract").

Peck points to two provisions of the Engineering Agreement to support his claim that Horrocks assumed a duty to maintain worker safety.  First, Horrocks agreed to "physically oversee . . . the work . . .to determine that the work performed [was] in

accordance with the plans and specifications." (Engineering Agreement ¶ 6.2(1)). Because the plans and specifications included the requirement that K & P abide by Utah OSHA excavation standards (Construction Contract Special Provisions ¶ 1-24), Peck argues that Horrocks contractually agreed to assume responsibility for the supervision of safety compliance. Second, the Engineering Agreement provides that Horrocks "will comply with and assist the owner to require all contractors . . . employed in the completion of the project to comply with all applicable Federal, State and Local laws. In addition, [Horrocks] will conform to the requirements of the Utah State Division of Health . . . ." (Engineering Agreement ¶ 1.1).

Horrocks replies that any effort by Peck to infer a duty on behalf of Horrocks to maintain safety from Horrocks' duty to provide general supervision is foreclosed by Horrocks' express disavowal of any responsibility to maintain safety in both the Engineering Agreement and the Construction Contract. Paragraph 2.11 of the Engineering Agreement provides that "[Horrocks] shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the work." (Engineering Agreement, ¶ 2.11). This same provision is also found in ¶ 27.3 of the Construction Contract.

Moreover, the Construction Contract expressly allocates responsibility for safety to K & P by providing that "[K & P] will be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the Work. He will

take all necessary precautions for the safety of, and will provide the necessary protection to prevent damage, injury or loss to all employees on the work . . . ." (Construction Contract, ¶ 11.1). This delegation is consistent with the Construction Contract's requirement that K & P carry insurance for any claims arising from bodily injury to its employees. See Construction Contract, ¶ 21.

There is a split of authority regarding whether an engineer who contractually assumes responsibility to the owner for general supervision of a construction project thereby assumes a duty of care to the employees of the general contractor to supervise the safety of their working conditions. See Frank D. Wagner, Annotation, Liability to One Injured in Course of Construction, Based upon Architect's Alleged Failure to Carry Out Supervisory Responsibilities, 59 A.L.R.3d 869 (1974) (hereinafter "59 A.L.R."); Comment, Architects' Liability for Construction Site Accidents, 30 U. Kan. L. Rev. 429 (1982) (hereinafter "Architects' Liability").

The minority rule imposes upon a supervising engineer a duty of care, on the logic that an "[engineers's] contractual duties of supervising work include [] a duty to ensure that the work was performed safely." Ivanov v. Process Design Assoc., 642 N.E.2d 711, 714 (Ill. App. Ct. 1993). The majority rule denies contractual liability, finding that:

> [a]n architect, or other design professional, who contracts with an owner of property for the preparation of plans and specifications for the erection of a building and who agrees to be responsible for the general administration of the construction contract between the owner and the general contractor is not contractually responsible for the safety of the workmen on the job site unless such duty is specifically assumed in the contract.

- 8 -

Balagna v. Shawnee County, 668 P.2d 157, 162 (Kan. 1983) (quoting Hanna v. Huer,

Johns, Neel, Rivers & Webb, 662 P.2d 243, 244 Syllabus ¶ 1 (Kan. 1983).

Without discussing particular contract language, the Utah Supreme Court followed

the majority rule when it held that a supervising architect owed no duty of care to the

employee of a subcontractor who was killed from the collapse of temporary scaffolding.

Peterson v. Fowler, 493 P.2d 997 (Utah 1972). The Peterson court wrote that:

> [the architect's] responsibility was to his client, the owner of the building,
> and his duty in that regard was to see that the sports arena was properly
> erected so that it would be safe for the uses to which it would be put when
> finished. It is the duty of the Industrial Commission and not of the architect
> to see that contractors furnish their employees with safe places to work.

Id. at 999; See also 59 A.L.R.3d at 880 (listing Peterson as a majority rule decision);

Architects' Liability, at 433 n. 41 (same) . Thus, we determine that, under Utah law,

Horrocks' contractual assumption of general supervisory duties did not include an

assumption of a duty to maintain safety for K & P's employees.

Although Peck argues that Utah would follow the minority rule here, we note that

even the minority rule would not help Peck under the circumstances of this case. The

contracts at issue in the minority rule decisions did not contain provisions expressly

disclaiming on the part of the engineer any responsibility for worker safety. See e.g.,

Heath v. Hutch Engineers, 420 A.2d 758, 759 (Pa. Super. Ct. 1980); Ivanov, 642 N.E.2d

at 714. Unlike the engineers in Heath and Ivanov, Horrocks here expressly disavowed

any contractual obligation to maintain safety precautions in the Construction Contract and

the Engineering Agreement. Indeed, the disavowal provision agreed to by K & P and Horrocks was added to the standard engineering form by the American Institute of Architects specifically to avoid liability under the minority rule. See Welch v. Grant Dev. Co., 466 N.Y.S.2d 112, 114 (N.Y. Sup. Ct. 1983); accord Architects' Liability, at 434.

Utah law provides that it is the "basic rule of contract interpretation that the intent of the parties is to be determined from the writing itself. . . ." Willard Pease Oil, 899 P.2d 766, 770 (Utah 1995). Horrocks provided in its contract that it would not be "responsible . . . for construction safety." Thus, we decline to hold that Horrocks has contractually assumed a duty to maintain safety in this case.[1]

B.      Implied Assumption of Duty

Several courts in states other than Utah have held that even where an engineer has assumed no contractual liability for safety, the engineer may expand its liability beyond the specific provisions of the employment contract through certain acts of control at the

---

[1] The Engineering Agreement also requires Horrocks to "conform to the requirements of the Utah State Division of Health . . ." (¶ 1.1, Engineering Agreement), but this provision does not concern worker safety. Peck argues that the Utah Division of Health refers to the Occupational Safety and Health Division of the Industrial Commission of Utah and thus, by reference, the Engineering Agreement imposes upon Horrocks an obligation to ensure worker safety. We reject that argument because it would be inconsistent with Horrocks' express disclaimer of any responsibility for worker safety. Instead, the Utah Division of Health must refer to the Utah Department of Health, which, for purposes of this project, is only concerned with whether the public is provided with clean and potable water.

job site. See Balagna, 668 P.2d at 163-166; Geer v. Bennett, 237 So.2d 311 (Fla. Dist. Ct. App. 1970). This rule follows the general rule of torts that "one who undertakes to render services has a duty to exercise reasonable care." Weber, By and Through Weber v. City of Springville, 725 P.2d 1360, 1364 (Utah 1986) (citing Restatement (Second) of Torts § 323 (1965). That doctrine has no applicability here, even if Utah were to adopt it, because Horrocks expressly declined to undertake responsibility for worker safety on this project and there was no evidence that Horrocks in fact assumed control at the job site over issues of worker safety.

Peck argues that Horrocks assumed a duty to maintain safety precautions on the day of the accident because it was consulted about whether the trench that collapsed on Zachery should be dug underneath an interfering steel culvert. We disagree.

In Peterson, the Utah Supreme Court absolved a supervising architect from liability where negligently erected scaffolding collapsed and killed the decedent, even though the architect was consulted about whether to erect such scaffolding and had declined to approve a change order to pay for extra scaffolding. Peterson, 493 P.2d at 998. The court noted that the

> architect . . . had nothing whatsoever to do with the scaffolding. He neither designed it, constructed it, nor designated any material for it, nor did he have anything to do with renting or maintaining it. He owed no duty to the subcontractors or their employees in connection with that scaffolding. His responsibility was to his client, the owner of the building . . . . It is the duty of the Industrial Commission and not of the architect to see that contractors furnish their employees with safe places to work.

Id. at 999. Similarly in this case, Horrocks played no role in the actual construction of the ditch. The Peterson court makes clear that a supervising engineer's participation in a strategic construction decision does not obligate it to ensure that all safety precautions are complied with in the implementation of that decision. The logic of the Peterson decision is especially compelling here, where Horrocks expressly disavowed any obligation to maintain safety.

Peck argues that there is a third basis for asserting liability even if Horrocks did not contractually assume responsibility for safety, and even if Horrocks did not assume de facto control over worker safety at the job site. Peck argues that liability may be predicated upon the simple fact that Horrocks, as an engineer, had actual knowledge of a safety problem and failed to take steps to correct that problem. Although this doctrine has some limited support in other states, see e.g., Balagna, 668 P.2d at 164, we do not believe Utah would impose a duty on an engineer on the basis of knowledge and inaction alone when the engineer contractually declines to accept responsibility for worker safety and does not, in fact, exercise control of worker safety at the job site. See Peterson, 493 P.2d at 999; Nauman v. Harold K. Beecher & Assoc., 467 P.2d 610, 614 (Utah 1970). In any event, the record here is devoid of any evidence that Horrocks knew in advance of the accident that the seven foot deep trench was neither sloped nor shored, or even that a worker would be standing in the bottom of the trench.

Moreover, Peck has produced no expert testimony from which a jury could infer that Horrocks acted unreasonably, even assuming Horrocks did owe a duty to Peck. Under Utah law, "the liability of [engineers] is based upon professional negligence with respect to which only those qualified in the field can testify as to the standard of competence and care possessed by professional men in the locality and whether there has been a breach of that standard of care." Nauman, 467 P.2d at 615 (citing Covil v. Robert & Co. Assocs., 144 S.E.2d 450 (Ga. Ct. App. 1965).[2] Thus, "whether or not the [engineer] exercised proper or reasonable judgment [] would have to be based upon the testimony of other [engineers] and not upon the testimony of lay persons, . . . [unless] the condition of [the] excavation was so obviously dangerous and unsafe immediately prior to the cave-in that any person could recognize the danger." Nauman, at 615-616. Here Peck did not put on expert testimony that Horrocks acted in an unreasonable and negligent fashion. Further, there was no evidence that the safety problem was obvious to lay persons. There were apparently other people at the job site at the time of the cave-in, and there is no evidence that any of them warned of the safety hazard. Thus, there is no evidence that Horrocks breached a duty of care, even assuming such a duty had existed.

_____

[2] Although the Nauman court addressed only the liability of architects, the Covil court addressed both engineers and architects. See Covil, 114 S.E.2d at 453. Moreover, the Utah Court of Appeals has recognized that architects and engineers are subject to the same expert witness requirements. See Wycalis v. Guardian Title of Utah, 780 P.2d 821, 827 n.8 (Utah Ct. App. 1989).

- 13 -

Although Peck has produced the affidavit of Rex Radford, an engineer, which opines that Horrocks contractually assumed a duty of care with regard to the safety of K & P's employees, there are several problems with that affidavit. First, the Radford affidavit attempts to interpret the contract and that is a function of law for the court. Further, even if Mr. Radford correctly concluded that Horrocks owed K & P's employees a duty of care, Mr. Radford's affidavit expressed no opinion concerning whether that duty was breached. Under Utah law, expert testimony is needed not only to establish the standard of care owed by an engineer but also to answer the question of "whether there has been a breach of that standard of care." Nauman, 467 P.2d at 615. Finally, in Part III, infra, we affirm the district court's decision to ignore Rex Radford's affidavit altogether because it is conclusory.

In sum, Peck presented no evidence from which a reasonable jury could infer that Horrocks either contractually or impliedly assumed a duty of care to Zachery. Horrocks contractually disavowed any responsibility for safety, and there is no evidence that Horrocks acted unreasonably in its duties as a supervising engineer. Thus, we affirm the district court's determination that Horrocks is not liable as a matter of law.

III. RADFORD AFFIDAVIT

Peck argues that the district court's decision to ignore Rex Radford's affidavit is reversible error. We disagree. This court reviews the district court's decision to

- 14 -

disregard an expert witness's testimony for an abuse of discretion, U.S. v. Rice, 52 F.3d 843, 847 (10th Cir.), cert. denied, 116 S.Ct. 2536 (1996). In the present case, there was no abuse of discretion.

Rex Radford is a construction engineer whose affidavit Peck produced in an attempt to survive Horrocks's motion for summary judgment. Rule 56(e) allows a party to survive summary judgment by producing an affidavit, but only when that affidavit "set[s] forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Radford's affidavit merely states the legal conclusion that Horrocks contractually assumed an obligation to help the Water District maintain safety and does not point to any specific facts or evidence. As "conclusory allegations do not establish an issue of fact under Rule 56," Bruce v. Martin-Marietta Corp., 544 F.2d 442, 445 (10th Cir. 1976), the district court did not abuse its discretion by disregarding Radford's affidavit.

## CONCLUSION

Because Peck has failed to a raise a genuine issue of material fact as to whether Horrocks breached any duty of care owed her son, Zachery, and because the district court did not abuse its discretion in disregarding Radford's affidavit as conclusory, we AFFIRM the district court's dismissal of Peck's claim for wrongful death.