32 F.3d 455
 29 Fed.R.Serv.3d 1112
 SHAMROCK DRILLING FLUIDS, INC., an Oklahoma corporation;
the Ireland Company; John M. Ireland, an
individual; Larry Bishop; Billie Jane
Bishop; and Ione Bishop,
individuals, Plaintiffs,
and
Patricia J. Skidgel, individually, and as guardian of Clyde
Ray Skidgel, Plaintiffs-Appellants,
v.
Brian R. MILLER, an individual; Carey B. Miller, an
individual; Richard Fale, an individual; BriCar Lease Bank
of Oklahoma City, Oklahoma; BriCar, Inc., formerly known as
BriCar Resources, Inc., an Oklahoma corporation; BriCar
Investments, an Oklahoma partnership; Does 1-5, inclusive,
individuals; Oklahoma Federal Savings and Investment
Association; American Oil Change Corporation, an Oklahoma
corporation; Does 1-20, inclusive; Defendants,
and
Liberty National Bank and Trust Company of Oklahoma City,
Defendant-Appellee.
 No. 93-6171.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 2, 1994.
 
 David R. Widdoes (Joe E. Edwards, with him on the briefs), Day, Edwards, Federman, Propester & Christensen (formerly Edwards, Sonders & Propester), Oklahoma City, OK, for appellants.
 Clyde A. Muchmore (Jimmy Goodman and Mark D. Spencer, with him on the brief), Crowe & Dunlevy, Oklahoma City, OK, for appellee.
 Before ANDERSON and BRORBY, Circuit Judges, and MECHEM,* District Judge.
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 Ms. Patricia Skidgel, a victim of a fraudulent investment scheme by accountant Brian Miller, intervened in an action against Miller and others for common law fraud and violations of federal and state securities laws. She prevailed against all but two defendants, one of which was Liberty National Bank ("Liberty"). On appeal, she contends that (1) the jury was misled by an instruction regarding Liberty's duty to disclose, and (2) the district court erred in refusing to submit a jury instruction on her theory of agency between Miller and Liberty. We affirm.
 
 BACKGROUND
 
 2
 Ms. Skidgel met with Miller in April 1986 to prepare her tax returns and discuss investment opportunities. Miller told her about the "BriCar Trust Account" that he and his brother, Carey, had supposedly established with Liberty. Through this "umbrella trust," Miller explained, she could invest in her own accounts, which he would service, which would be FDIC-insured and earn interest at two percent above the prime rate. Miller encouraged Ms. Skidgel to establish one or more of these accounts and provided her with a two-page, typewritten explanation of the terms and conditions described above. See Appellant's App. at 778-79.
 
 
 3
 Ms. Skidgel invested some money in one of Miller's accounts, but testified that she wanted to "check into it" before investing any more. Id. at 425-28. She called the FDIC and was advised to call Liberty and speak to Harvey Dowdy, an officer at Liberty's Norman, Oklahoma, branch. Id. at 431.
 
 
 4
 According to Ms. Skidgel's testimony, she called Dowdy and went over Miller's representations about the supposed BriCar Trust Account "point by point." Id. at 433. Ms. Skidgel testified that Dowdy "agreed with all of it," and that he said her money would be in "good hands." Id. at 433-34. Dowdy, meanwhile, testified that he could not recall any telephone conversation with Ms. Skidgel, or any trust agreement between Miller and Liberty. Id. at 597-99.
 
 
 5
 In any event, Ms. Skidgel opened several more accounts with Miller and started receiving monthly statements reflecting her balances and interest paid on her accounts. Id. at 448. Through February 1988, these statements bore the Liberty logo, which Ms. Skidgel believed to be authentic since she believed that her funds were actually deposited there.
 
 
 6
 In fact, Miller was not depositing her funds at Liberty or any other bank, but was using the money to pay debts and expenses of other business ventures. Moreover, Miller apparently had no authorization to use Liberty's logo, and when Liberty discovered in February 1988 that Miller was using it they ordered him to cease immediately, which he did. Eventually, in 1989, Ms. Skidgel learned that she and others had been defrauded. By that time, Miller was in bankruptcy, facing criminal charges, and Ms. Skidgel's money was gone.
 
 
 7
 Ms. Skidgel intervened in a lawsuit against Miller and others, including Liberty, and won approximately $1.5 million in damages from several defendants, but she lost on all of her claims against Liberty. Her claims against Liberty were for common law fraud, directly and vicariously through Miller, and for aiding and abetting violations of federal and state securities laws. The federal aiding and abetting claims have since dropped out.[1]
 
 DISCUSSION
 I.
 
 8
 Ms. Skidgel contends that Jury Instruction 70 was erroneous and prejudicial to her claims against Liberty for common law fraud and aiding and abetting state securities violations. Instruction 70, entitled "NO DUTY TO WARN," stated:
 
 
 9
 You have heard evidence relating to the plaintiffs' claims of inaction on the part of defendant Liberty Bank in preventing the alleged fraud of Brian Miller or warning the plaintiffs of his activities. Such evidence has been allowed solely for you to consider whether it assists in establishing scienter, as I have discussed it.
 
 
 10
 Defendant Liberty Bank had no general duty under the law to investigate and discover the nature of Brian Miller's dealings with the plaintiffs or to warn the plaintiffs of Brian Miller's activities.
 
 
 11
 This instruction applies to all claims based upon a theory of fraud.
 
 
 12
 Appellant's App. at 307 (emphasis added).
 
 
 13
 Ms. Skidgel argues that, for two reasons, this instruction misled the jury and precluded any chance that it would find Liberty liable for inaction (i.e., failing to inform Miller's investors that he was not authorized to represent Liberty or use its logo). First, she contends that the instruction essentially directed the jury to find that Liberty owed her no duty of disclosure, period, under any circumstances, "instead of allowing the jury to consider the evidence admitted and determine for itself if a duty of disclosure had arisen." Appellant's Reply Br. at 2.
 
 
 14
 Second, she contends that the jury was confused by the statement that evidence relating to Liberty's inaction was "allowed solely for you to consider whether it assists in establishing scienter," because the term "scienter" was used only in connection with the federal securities claims. Thus, she contends that the jury must have believed Liberty's inaction could not support liability for common law fraud or aiding and abetting state securities violations. Appellant's Br. at 21, 28.
 
 A.
 
 15
 In response, Liberty claims that Ms. Skidgel did not object to Instruction 70 on the two grounds stated above and therefore cannot raise them on appeal. See Fed.R.Civ.P. 51. "A party's objection to a jury instruction must be sufficiently clear such 'that the grounds stated in the objection [are] obvious, plain, or unmistakable.' " Comcoa, Inc. v. NEC Tel., Inc., 931 F.2d 655, 660 (10th Cir.1991) (quoting Aspen Highlands Skiing Corp. v. Aspen Skiing Co., 738 F.2d 1509, 1514 (10th Cir.1984), aff'd, 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985)); see also Kenworthy v. Conoco, Inc., 979 F.2d 1462, 1468 (10th Cir.1992) (noting that "[a] party who fails to bring to the trial court's attention ambiguities created by jury instructions ... may not seek to take advantage of such ambiguities on appeal"); Weir v. Federal Ins. Co., 811 F.2d 1387, 1390 (10th Cir.1987) (stating that counsel must make their objections to jury instructions "abundantly clear" so that the trial court has "an opportunity to make proper changes").
 
 
 16
 Ms. Skidgel objected to Instruction 70 through her counsel, Mr. Widdoes, who stated the objection as follows:
 
 
 17
 MR. WIDDOES: ... Plaintiffs object to [Instruction 70] as an improper characterization of the facts alleged by Plaintiffs and the law concerning disclosure by an aider and abettor. Plaintiffs have never contended anything more than that Liberty should have made a disclosure that, one, it was not involved in a BriCar Trust Account, as that representation exists in Exhibit 60 in the bank's file; or two, that its logo was being improperly used. For the reasons that I outlined above with respect to [Instruction 40], we feel that Liberty did have a duty to disclose under the facts of this case and that a reasonable juror could so find, and therefore feel that this instruction is improper.
 
 
 18
 Appellee's Supp.App. at 127-28.
 
 
 19
 Mr. Widdoes's objection to Instruction 40, incorporated into his objection to Instruction 70, stated in pertinent part:
 
 
 20
 In sum, Plaintiffs have called for an instruction based on the fact that a reasonable juror could find a duty to disclose on Liberty's part for [the] following reasons:
 
 
 21
 First, whether Mr. Dowdy spoke to Mrs. Skidgel but did not speak the whole truth. Second, that Liberty at some point became, quote, actually aware that [its name] was being used in a fraudulent securities scheme, which under the securities law would create such a duty to disclose. Third, that Liberty may have created its own duty to speak when its agent voluntarily advised one investor about the use of the logo being unauthorized.
 
 
 22
 Id. at 126-27.
 
 
 23
 We have reviewed the record and conclude that Mr. Widdoes's objection on behalf of Ms. Skidgel adequately preserved her first ground on appeal for challenging Instruction 70, see supra, but not her second. In essence, her objection below was that the instruction erroneously declared that Liberty had no duty to disclose, regardless of how the jury might view the evidence. Mr. Widdoes made no explicit or implicit reference, however, to the second sentence of the instruction regarding the purposes for which the jury was to consider certain evidence; that argument appears for the first time on appeal. Nor are the two arguments so closely related that the objection encompassed both grounds. Thus, we will consider only the question posed to the district court: whether Instruction 70 erroneously and unduly prevented the jury from considering, based on the evidence, whether Liberty had a duty of disclosure to Ms. Skidgel.
 
 B.
 
 24
 We review the jury instructions as a whole, in light of the record, to determine whether they " 'correctly state the applicable law and provide the jury with ample understanding of the issues and standards of the case.' " Denbo v. United States, 988 F.2d 1029, 1034 (10th Cir.1993) (quoting Lamon v. City of Shawnee, 972 F.2d 1145, 1153 (10th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1414, 122 L.Ed.2d 785 (1993)). Our focus is not on whether a single instruction was " 'faultless in every particular, but whether the jury was misled in any way.' " RTC v. Stone, 998 F.2d 1534, 1549 (10th Cir.1993) (quoting Wheeler v. John Deere Co., 862 F.2d 1404, 1411 (10th Cir.1988)); see also Hall v. Western Prod. Co., 988 F.2d 1050, 1058 (10th Cir.1993). When Instruction 70 is considered with the other instructions given to the jury, we find no error.
 
 
 25
 Instruction 4, which listed the many claims at issue and aligned them between plaintiffs and defendants, specifically told the jury that it "must decide" Ms. Skidgel's claim against Liberty for common law fraud. Appellant's App. at 231. The elements of common law fraud under the law of the forum state, Oklahoma, were set forth and explained in Instructions 60 through 70. Id. at 297-307. Instruction 61 stated that the plaintiffs were required to prove, among other things, that the defendants made a false representation. Id. at 298. Instruction 63 defined "false representation" to include "the omission or suppression of a fact by one who has a duty to disclose it ...." Id. at 300 (emphasis added). Instruction 64 then explained six factual scenarios that would give rise to a "duty to disclose." Id. at 301.[2] Ms. Skidgel did not object to these instructions.
 
 
 26
 Instruction 70 informed the jury that Liberty had "no general duty" to take affirmative action to warn Ms. Skidgel. Certainly, if "general" had not been included as a modifier, Ms. Skidgel's argument that the instruction effectively directed a verdict in favor of Liberty would have been more persuasive. But the modifier was included, and we cannot presume that the jury disregarded it or treated it as mere surplusage. See United States v. Lonedog, 929 F.2d 568, 576 (10th Cir.) (recognizing the assumption that juries follow their instructions), cert. denied, --- U.S. ----, 112 S.Ct. 164, 116 L.Ed.2d 129 (1991); Whiteley v. OKC Corp., 719 F.2d 1051, 1059 (10th Cir.1983) (same).
 
 
 27
 Instruction 70 was intended to remind the jury that it had to examine the evidence and find at least one of the special circumstances in Instruction 64 before it could conclude that Liberty had a duty of disclosure, and thus incur liability for failing to act. Considering the instructions as a whole, we conclude that Instruction 70--though not perfect--adequately performed its intended function and correctly stated the applicable law. See Silk v. Phillips Petroleum Co., 760 P.2d 174, 179 (Okla.1988) (noting that silence is fraudulent only if there was a duty to speak "on account of peculiar circumstances"). Thus, the district court did not err in giving this instruction.
 
 II.
 
 28
 Ms. Skidgel thought the jury should be allowed to consider whether Miller acted as Liberty's agent, either with actual or apparent authority, or through agency by estoppel. She contends that the district court erred in refusing to instruct the jury on this theory.
 
 
 29
 Actually, her appeal is more appropriately viewed as an appeal from the district court's interlocutory judgment as a matter of law dismissing her agency claim, Fed.R.Civ.P. 50(a),[3] which was incorporated into the final judgment. See Bankers Trust Co. v. Lee Keeling & Assocs., 20 F.3d 1092, 1095-96 (10th Cir.1994). In any event, under either posture, we review the record de novo and consider whether the evidence supporting her agency theory was sufficient to create a question for the jury. See Dow Chemical Corp. v. Weevil-Cide Co., 897 F.2d 481, 484 (10th Cir.1990) (noting that where a refusal to instruct effectively takes an issue away from the jury, our review is the same as for a judgment as a matter of law). Like the district court, we conclude that it was not.
 
 
 30
 Ms. Skidgel's testimony demonstrates that she knew she was dealing with Miller, not Liberty. She said she believed Miller, not the bank, would pay her interest on her investments, and that Miller was "probably getting six percent over prime, or whatever," from Liberty. Appellant's App. at 420. She knew her signed contract was with Miller's entities, not Liberty. Id. at 424. According to her testimony, Dowdy, a Liberty officer, confirmed everything that Miller had put in writing about the BriCar Trust Account, id. at 433-39, but Miller's writing does not purport to be from Liberty, and it is clear that Ms. Skidgel did not think that it was. Further, she signed and returned an acknowledgment to Miller recognizing that her account would be moved to Oklahoma Federal Savings and Investment Association. Appellee's App. at 188-89.
 
 
 31
 In sum, we have examined the record and we hold that the evidence is insufficient to create an issue for the jury as to whether an agency relationship existed between Liberty and Miller under any theory of agency. Thus, the district court did not err in granting judgment as a matter of law against and refusing to instruct the jury on her agency claim.
 
 
 32
 For the reasons expressed above, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Edwin L. Mechem, Senior District Judge, United States District Court for the District of New Mexico, sitting by designation
 
 
 [1]
 After the jury rendered its verdict and after this appeal was filed and briefed, the United States Supreme Court decided in Central Bank v. First Interstate Bank, --- U.S. ----, ----, 114 S.Ct. 1439, 1455, 128 L.Ed.2d 119 (1994), that no private right of action for aiding and abetting exists under Sec. 10(b) of the Securities Exchange Act of 1934. Accordingly, Ms. Skidgel withdrew her federal claims against Liberty
 
 
 [2]
 Instruction 64 stated:
 When dealing with another, a person has a duty to disclose a material fact if it is known to him and
 
 
 [1]
 he and the other person are in a fiduciary relationship; or
 
 
 [2]
 he has stated another fact which was true at the time he stated it but which subsequently became untrue, and he knows the other person is acting under the impression that the fact as originally stated is still true; or
 
 
 [3]
 he states other facts which are true but which he knows will create a false impression of the actual facts in the mind of the other person if the material fact is not disclosed; or
 
 
 [4]
 he knows by his own ambiguous words or conduct he has created a false impression of the actual facts in the mind of the other person; or
 
 
 [5]
 he knows the fact is peculiarly within his knowledge and the other person is not in a position to discover the fact for himself; or
 
 
 [6]
 he has previously represented the fact to be otherwise with an honest belief in its truth, and afterwards learned that the actual fact was other than as first represented
 Appellant's App. at 301.
 
 
 [3]
 At the midpoint of trial, the district court granted Liberty's motion for judgment as a matter of law on Ms. Skidgel's agency claim, explaining as follows:
 The motion is granted with respect to an agency theory, especially apparent agency or ... on the basis of estoppel.... [L]et's assume that Mr. Dowdy completely ratified and endorsed Plaintiffs' Exhibit 60, that the arrangement was exactly as represented by the Millers. That would not make Mr. Miller an agent of the bank, it would just make him the manager of an umbrella deposit in the bank, under specifically negotiated circumstances, negotiated with the bank. So the agency claims will not be submitted.
 Appellee's Supp.App. at 93-94. Later, Ms. Skidgel asked the court to reconsider submitting her agency theory to the jury, but the court stood by its original ruling. Id. at 131-32. Thus, the reason the jury was not instructed on agency was because that claim had been dismissed under Rule 50.