**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 28 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

CINDI SAPORITO,

      Plaintiff-Appellant,

v.

BOARD OF COMMISSIONERS OF THE
COUNTY OF LABETTE, KANSAS,

      Defendant-Appellee.

No. 97-3086
(D.C. No. 94-1553-MLB)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **ANDERSON** and **KELLY**, Circuit Judges, and **BRETT**,[**] District Judge.

_____

Cindi Saporito, ("Saporito"), appeals an order of the United States District Court for

the District of Kansas granting summary judgment to the Board of Commissioners of the

County of Labette, Kansas ("County") on Saporito's claims for negligent failure to conduct

a proper search and negligent failure to continue a proper search. Saporito also appeals an

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir.R. 36.3.

[**]Honorable Thomas R. Brett, District Judge, United States District Court for the
Northern District of Oklahoma, sitting by designation.

adverse jury verdict on her claim for negligent failure to warn, asserting the court gave erroneous jury instructions. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons expressed below, the trial court is affirmed.

## I. Background

This action was brought by Saporito, known as Cindi Roberts at the time of the incident which gave rise to this litigation , to recover damages for the wrongful death of her 3-year-old daughter, Sarah Roberts ("Roberts") on December 17, 1992. Roberts died from severe hypothermia after Saporito drove her vehicle into floodwaters on a rural county gravel road in sub-freezing weather. Saporito and Roberts were able to escape from the partially submerged and disabled vehicle, but were not discovered until the following morning. Roberts died sometime during the night and Saporito was initially believed to be dead when found. Saporito also sought damages for physical and mental injuries to herself arising from the incident. Saporito filed this action against County for negligently failing to erect traffic signs warning of periodic flooding and for negligently failing to perform its law enforcement duties in commencing and continuing a search for Saporito and Roberts after they were reported missing.

The sequence of events which led to the fatal accident began at approximately 5:30 p.m. on December 17, 1992, when Saporito left her rural home to pick up Roberts at her babysitter in Parsons, Kansas. Saporito's home was located on Strauss Road, which Saporito knew was impassable due to the flooding of the Neosho River based upon the level

of water surrounding her home and from radio news reports. Saporito exchanged Christmas presents with the babysitter and then drove through Parsons to view the holiday lights with her daughter.

At approximately 7:00 p.m., Saporito began the drive home, taking the usual alternate route she followed when the Neosho River flooded. The alternate route was a gravel road two miles east of the Strauss Road intersection. However, Saporito was singing Christmas carols with her daughter and inadvertently turned on the road one mile east, which appeared to be identical to the correct road, until it abruptly ended in a "T" intersection.

Believing she had traveled far enough south to be beyond the flooding, she turned west on Road 22,000, a road with which she was not familiar. Saporito crossed a bridge traversing Litup Creek , a tributary of the Neosho River, and drove into icy floodwaters on the far west side of the bridge. The engine of her vehicle died as the water rose above the base of the car windows and poured into the floorboard. Saporito felt the current carrying the rear of the vehicle downstream. She then removed Roberts from her restraint seat and carried her through chest-high frigid water, slipping several times, completely submerging the pair. After reaching the bridge, Saporito lost consciousness, peripherally aware of Roberts' crying and walking in circles around her.

At about 7:00 p.m., Saporito's 9-year-old son telephoned family friends, Rick and Kelly Neel, concerned that his mother had not returned home. The Neels began to search for the now-missing pair. At one point, the Neels traveled down the same road as Saporito

but were stopped by floodwaters before reaching the bridge which Saporito had crossed and on which she and Roberts collapsed. Rick Neel flashed his headlights toward the bridge and called to Saporito but saw no one and heard no response.

At about 9:00 p.m., Gary Saporito, Cindi's then fiancé, arrived home and began contacting friends and the local hospital in an effort to find Saporito and Roberts. Rick Neel ("Neel") joined Gary Saporito and the two continued to search for the missing woman and child. At one point they returned to the road leading to the bridge with a hand-held halogen spotlight but were still unable to locate the missing pair. At approximately 11:30 p.m., Neel called the Labette County Sheriff's Department, identified himself as Saporito's father, and advised there must have been a serious accident or foul play involving the missing persons. Neel requested an immediate search be instigated for them. The dispatcher put out an attempt to locate ("ATL") bulletin to the two patrolling deputies, one of whom kept a lookout for the missing pair until he went off duty at 1:30 a.m. Gary Saporito and Neel continued to search throughout the night. A photograph of the missing pair was taken to the Sheriff's office between 2:00 a.m. and 3:00 a.m. by Gary Saporito and Neel. The remaining deputy went off duty at approximately 4:00 a.m. No search personnel were available until the next shift came on duty at approximately 7:00 a.m. At about that time, Neel was organizing a more intense search effort with friends and neighbors.

At approximately 8:00 a.m. the next morning, Deputies Eric Charles and Ken Hicks drove to the Srauss Road area. They drove through high water on Strauss Road and

approached the intersection with Road 22,000, which remained flooded. As they were turning around to exit the floodwaters, they looked east and saw Saporito's partially submerged vehicle. Looking toward the bridge, they first thought they saw two logs which had been deposited on the bridge by floodwaters. Upon closer inspection, they discovered that the two objects they saw were Saporito and Roberts; Roberts dead and Saporito, unconscious but alive.

## II. Standard of Review

We review the district court's grant of summary judgment de novo, applying the same standard as employed by the district court. Bohn v. Park City Group, Inc., 94 F.3d 1457, 1460 (10th Cir. 1996). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Williams v. Widnall, 79 F. 3d 1003, 1005 (10th Cir. 1996). The moving party has the initial burden of showing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the party opposing a properly supported motion for summary judgment must offer evidence, in admissible form, of specific facts sufficient to raise a genuine issue for trial as to the elements of the non-moving party's case. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Thus, to defeat a summary judgment motion, the

non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586.

In applying this standard, we must "examine the factual record and reasonable inferences therefrom in the light most favorable to the non-moving/opposing party." Kidd v. Taos Ski Valley, Inc., 88 F.3d 848, 851 (10th Cir. 1996). If no dispute exists concerning a genuine issue of material fact, we then determine whether the district court correctly applied the substantive law. Peck v. Horrocks Engineers, Inc., 106 F.3d 949, 951 (10th Cir. 1997).

The standard for review as to Saporito's claim of error in the district court's jury instructions, if properly raised on appeal, is whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues. Wheeler v. John Deere Co., 935 F.2d 1090, 1102 (10th Cir. 1991).

### III. Analysis

Saporito and County filed cross motions for summary judgment in the district court. Saporito's motion was denied. The district court granted County's motion regarding Saporito's claims of negligence in the conduct of the search. County's motion as to Saporito's claim of negligent failure to sign was denied. A jury trial followed on that claim which resulted in a verdict for County.

Saporito's first assertion is that the district court erred in granting summary judgment to County on Saporito's claim of negligent failure to conduct a proper search based upon

Saporito's failure to substantially comply with the notification requirements of the Kansas Tort Claim Act, Kan.Stat.Ann. § 12-105b(d) (1991), ("Tort Claim Act") . This statute provides, in pertinent part, as follows:

> Any person having a claim against a municipality which could give rise to an action brought under the Kansas tort claim act shall file a written notice as provided in this subsection before commencing such action.     The notice shall be filed with the clerk or governing body of the municipality and shall contain the following:  (1) the name and address of the claimant and the name and address of the claimant's attorney, if any;  (2) a concise statement of the factual basis of the claim, including the date, time, place and circumstances of the act, omission or event complained of;  (3) the name and address of any public officer or employee involved, if known; (4) a concise statement of the nature and the extent of the injury claimed to have been suffered; and (5) a statement of the amount of monetary damages that is being requested.  In the filing of a notice of claim, *substantial compliance with the provisions and requirements of this subsection shall constitute valid filing of a claim . . . .* (emphasis added)

The notice of claim sent on behalf of Saporito was dated August 16, 1994, and reads as follows, in pertinent part:

> Our firm has been retained by Ms. Cindi Saporito to represent her interests, and those of the Estate of her deceased three year old daughter, against Labette County for injuries and damages arising from an incident on or about December 18, 1992, as a result of the county's negligence.  This letter is being sent pursuant to, and in compliance with KANSAS STATUTES ANNOTATED SECTION 12-105(a) [sic], prior to initiating a lawsuit.
>
> Pursuant to KANSAS STATUTES ANNOTATED SECTION 12-105a(d) [sic], you are hereby given notice of the following:
>
> . . . .
>
> As Mrs. Roberts drove west on the county road, she approached a low water bridge.  *No signs or warnings were posted to indicate the presence of high water or a flooded roadway*.  Mrs. Roberts drove her car onto the bridge and immediately ran into deep, running water that covered the roadway for approximately 120 feet....

The current swept the vehicle from the road and carried it a distance downstream. It was very dark at the time of the incident, approximately 9:30 p.m.; it was very cold in late December; and Mrs. Roberts had been detoured onto a road which she had never traveled. Mrs. Roberts took Sara [sic] in her arms and got out of the vehicle. She struggled to wade through very deep, running water back to the low water bridge where she collapsed. Mrs. Roberts and Sara [sic] were discovered the next morning at approximately 9:00 a.m. by Labette County Sheriff's Officers .

. . . .

If the county is not the entity responsible *for posting detour and/or warning signs at the location of this incident*, please notify us immediately. (emphasis added)

The district court determined the demand letter did not substantially comply with the provisions of the Tort Claim Act in placing County on notice of a claim for negligent failure to conduct a proper search. We agree.

The only claim of negligence of which County was potentially notified by this letter was one for failure to post warning signs about flood conditions. There is no mention of failure to properly conduct a search. The fact that the letter references the pair was "discovered" by sheriff's officers does not assert a failure to exercise reasonable care in the search. Saporito correctly states that the purpose of the Tort Claim Act is in part to provide a unit of government with the opportunity to ascertain the facts attending the events at a time while the occurrence is fresh in the minds of those possessing knowledge of the subject. However, under Saporito's argument, a notice would require nothing beyond the recitation of the facts of the incident, leaving defendants subject to any possible causes of action which might be asserted from those facts. Such an interpretation is contrary to the purpose and intent of the Tort Claim Act, which initially is to allow government to be apprised of and

honor legitimate claims for redress without the expense and distraction of litigation. Substantial compliance requires a plaintiff to state facts sufficient to constitute "a concise statement of the factual basis of the claim...and circumstances of the act, omission or event complained of." Kan.StatAnn.§12-105b(d) (1991).

The district court based its decision on the holding in Johnson v. Board of County Commissioners of Pratt County, 913 P.2d 119 (Kan. 1996), which interprets the provisions of the Kansas Tort Claim Act. In Johnson, plaintiffs filed a lawsuit for damage to their property caused by erosion from redirected water flow across their property resulting from the construction of a new bridge in 1988. A second cause of action was asserted under the Restatement (Second) of Torts § 323 (1964) for negligence based upon statements made and remedial work performed by the county after a flood in 1988 which occurred shortly after the construction of the new bridge.

The Johnson court concluded that the conduct underlying the two causes of action was separate and distinct. As plaintiff's notice had addressed only the issue of erosion, it did not provide the necessary notice to the defendant required by the Tort Claim Act regarding the second claim asserted.

In this case, Saporito's notice relates only to failure to post detour and/or warning signs. This constitutes a separate act or omission from conducting a search for a missing person. Saporito failed to substantially comply with the notice requirements of Kan.Stat.Ann. §12-105b(d), which requirements are a condition precedent to commencing

-9-

an action against County. Saporito is therefore barred from bringing claims arising from the alleged negligent search.

The district court also granted summary judgment to County on Saporito's claim for failure to continue the search. Saporito asserts she did not discover this claim until discovery was produced and is therefore excused from the notice requirements of the Tort Claim Act. However, the complaint filed by Saporito alleges "that defendants negligently failed to initiate a timely search for plaintiff and her daughter when they were reported lost."

In response to Saporito's allegation, County answered that the claim made was outside the scope of the required notice. Saporito could have cured the defect at that time but chose to stand on the complaint as pled. Accordingly, the Court finds Saporito failed to fulfill the condition precedent in regard to her claim for negligent failure to continue the search and the district court properly granted summary judgment on this claim.

The Court next reviews Saporito's claims regarding the jury instructions given by the district court in the negligent signage claim. Saporito urges two instructions are erroneous and that their inclusion justifies reversal and the granting of a new trial. The allegedly objectionable instructions are numbers 16 and 19. Instruction number 16 reads as follows:

> The law of Kansas provides that a county has the duty to warn drivers using its roadways of a road hazard which is not self-evident so that a driver operating his or her vehicle in a reasonable and prudent manner may perceive, decide and perform a necessary maneuver to avoid hazard. The violation of this duty is negligence.

Instruction number 19 reads:

> The law of Kansas provides that a county is not liable for temporary conditions on a roadway due to weather. Labette County has
> the burden of proof on this issue.

Saporito asserts instruction number 16 misstates Kansas law and is prejudicial to Saporito, and that a proper instruction would have resulted in a different verdict. Saporito urges the duty to warn extends to all drivers, not only to those who are reasonable and prudent.

Saporito asserts instruction number 19 is contrary to the law of the case as stated in the Memorandum and Order of the district court dated December 12, 1996, in which the court concluded that the definition of weather "does not include floods, although it assuredly includes events that cause floods."

County counters that this Court is procedurally barred from reviewing the instructions based upon Saporito's failure to provide a trial transcript. Alternatively, County states instruction number 19 does not conflict with the district court's prior rulings and both instructions properly state the law of Kansas. Finally, County asserts any error is harmless because the jury did not reach the affirmative defense of government immunity which is the subject of the challenged instruction number 19.

We hold Saporito failed to provide an adequate record against which the Court may review the jury instructions given. Further, had an adequate record been provided, it is clear from the verdict form that the jury never progressed beyond an initial finding that Saporito

failed to establish the County was at fault under Saporito's case in chief and therefore never considered instruction 19 regarding the affirmative defense. Finally, the Court concludes instruction number 16 is an accurate recitation of Kansas statutory law and instruction number 19 is consistent with case law. As such, and absent evidentiary background to establish otherwise, the instructions are not misleading.

This circuit has long held that when reviewing a jury charge to determine its propriety the Court must consider all the jury heard and then view the charge from the jury's perspective. King v. Unocal Corp., 58 F.3d 586, 587 (10th Cir. 1995), (quoting Considine v. Newspaper Agency Corp., 43 F.3d 1349, 1365 (10th Cir. 1994)). Instructions need not be faultless in every particular but must leave the jury with an understanding of the issues and its duty to determine those issues. The dispositive issue, when considered in the context of the entire proceeding, is whether the instructions were misleading in any way. Shamrock Drilling Fluids, Inc., v. Miller, 32 F.3d 455 (10th Cir. 1994).

It is "appellant's responsibility to order and provide all portions of the transcript necessary to give the Court of Appeals a complete and accurate record of the proceedings insofar as such proceedings relate to the issues raised on appeal." 10th Cir. R. 10.1.1. The rule recognizes that occasions will arise where a complete transcript is not necessary or when a partial transcript is sufficient.

Two appellate rules address the record necessary for consideration of jury instructions on appeal. 10th Cir. R. 10.3.1(e) provides that all jury instructions should be included as

well as proposed instructions which were refused. 10th Cir. R. 10.3.2(a) states: "when an appeal is based upon ...the giving or failure to give a jury instruction ...a copy of the pages of reporter's transcript at which the evidence, offer of proof, instruction, ruling or order, and any necessary objection are recorded, should be included in the record."[1]

In this case, as in <u>King</u>, <u>supra</u>., Saporito provided no transcript or excerpts of the proceedings below detailing the evidence at trial on which the district court relied in fashioning appropriate instructions.  It is appellant's responsibility to provide such record. 10th Cir. R. 10(b)(2). Further, the Court is under no obligation to remedy any failure of counsel to fulfill that responsibility.  <u>Deines v. Vermeer Mfg. Co.</u>, 969 F.2d 977 (10th Cir. 1992).  Absent that record, this Court has no context within which to evaluate the correctness of the instructions.

The Court notes,  however, that substantive grounds appear in the record which support a finding that the jury instructions given were proper.  In particular, the court prepared a verdict form which progressively addressed the issues presented in the following order:  Saporito's case in chief, County's defense, comparative negligence, County's affirmative defense and finally, calculation of damages.  The first question on the verdict form was,  "Do you find Labette County to be at fault? (Answer "yes" or "no")."  The jury placed a checkmark beside the space provided for "No."  Immediately following this, the

---

[1]Saporito provided only the transcript of the instruction conference.  No proposed instructions were proffered.

form states: "If no, sign and date verdict, and notify the law clerk that verdict has been reached. If your answer is yes, proceed to answer question 2."

The instruction format also followed the same progression. The court first gave standard opening instructions. In instruction number 12, the court set forth the claims and defenses of the parties, beginning with a statement of the case-in-chief and explaining the appropriate burden of proof. Affirmative defenses are then explained, along with the burden of proof for these.[2] Instructions regarding comparative fault are given next, followed by instructions on Kansas law.

---

[2]Instruction number 12 reads:

The plaintiff, Cindi Saporito, claims that she was injured, that her daughter died, and that she sustained damages as a result of the fault of the defendant, Labette County, in failing to maintain its roads in a reasonably safe condition by failing to erect warning signs of a road hazard that was not self-evident: water on Road 22000 at the Litup Creek bridge. The defendant asserts that the hazard was self-evident, denies that the absence of a warning sign caused the accident, and denies that the plaintiff was injured or damaged to the extent she claims. The plaintiff has the burden of proving that her claims are more probably true than not true.

The defendant claims, as affirmative defenses, that the plaintiff was at fault in failing to drive with appropriate caution given the information known to her at the time of the accident, failing to keep a proper lookout, failing to keep her vehicle under proper control, driving at a speed greater than is reasonable under the conditions and hazards then existing, and driving into water without knowing the depth and current. The defendant also claims that the flooded roadway was a temporary condition caused by weather. The plaintiff denies that she was at fault in any way and denies the flood was caused by weather conditions. The defendant has the burden of proving its affirmative defenses are more probably true than not true.

These are merely the claims and defenses of the parties. The claims and defenses themselves are not evidence.

-14-

Instruction number 16 deals with an issue which was necessarily considered by the jury in rendering its verdict. The absence of a trial transcript however prevents the Court from determining whether the evidence conflicted with the instruction. The Court finds the inclusion of the term "reasonable and prudent manner" is consistent with the Kansas Supreme Court's previous ruling in a construction zone warning sign case, Sterba v. Jay, 249 Kan. 270, 816 P.2d 379 (1991), that the duty to warn is owed to the "ordinarily observant driver." The Court notes no appreciable difference in the meaning of "reasonable and prudent" and "ordinarily observant" which so misstates the law as to mislead the jury.

Instruction number 19 addresses the affirmative defense of liability for temporary conditions due to weather. The language of this instruction is taken directly from the Kansas statute, Kan. Stat. Ann. §75-6104. No qualifying instructions follow. It is on its face an accurate statement of the law of the state and absent additional record to establish it is misleading in light of the testimony at trial, is not misleading so as to justify reversal of the verdict rendered. Further, the instruction is not inconsistent with the district court's prior order. The court's ruling was made in the context of interpreting the statutory exceptions to governmental immunity carved from the Kansas Tort Claim Act, specifically Kan.Stat.Ann.§ 75-6104(l).[3] Moreover, the jury did not reach the issue of this affirmative defense as it returned its verdict based upon the conclusion that Labette County was not at fault.

---

[3]This section provides a governmental entity shall not be liable for damages resulting from "temporary or natural conditions on any public way or other public place due to weather conditions."

Inferentially, the jury found Saporito did not meet her burden of proof. This Court concludes the district court's instructions were proper given the record presented.

AFFIRMED.

Entered for the Court


Thomas R. Brett,
Senior District Judge